# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BELLE COHEN, Individually and On Behalf All Others Similarly Situated,<br><br>PLAINTIFF,<br><br>v.<br><br>TWENTY-FIRST CENTURY FOX, INC., RUPERT MURDOCH, LACHLAN K. MURDOCH, CHASE CAREY, SIR RODERICK I. EDDINGTON, DELPHINE ARNAULT, JAMES W. BREYER, DAVID DEVOE, VIET DINH, JAMES MURDOCH, JACQUES NASSER, ROBERT SILBERMAN and TIDJANE THIAM,<br><br>DEFENDANTS. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Belle Cohen ("Plaintiff"), individually and on behalf of all others similarly situated, by her undersigned attorneys, alleges the following upon personal knowledge as to her own acts and information and belief as to all other matters, upon the investigation by counsel, which includes, among other things, a review of Twenty-First Century Fox, Inc.'s ("21CF" or the "Company") and The Walt Disney Company's ("Parent" or "Disney") public documents, conference calls transcripts, announcements, United States Securities and Exchange Commission ("SEC") filings, and wire and press releases published by and regarding the respective businesses and proposed acquisition of 21CF by Disney.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought against 21CF and the members of its Board of Directors (the "Board" or the "Individual Defendants") pursuant to Sections 14 and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 14d-9, 17

C.F.R. § 240.14d- 9(d) ("Rule 14d-9"). Plaintiff seeks to enjoin vote of shareholders of 21CF on a proposed transaction (the "Proposed Transaction"), pursuant to which, after spinning off certain of its businesses into a newly listed company ("New Fox"),[1] 21CF will be acquired by the The Walt Disney Company ("Disney") through TWDC Holdco 613 Corp. ("New Disney"), WDC Merger Enterprises I, Inc. ("Delta Sub") and WDC Merger Enterprises II, Inc. ("Wax Sub").

2.     On June 20, 2018, 21CF and Disney issued a joint press release announcing they had entered into an Amended and Restated Agreement and Plan of Merger (the "Merger Agreement").[2] Under the terms of the Merger Agreement, stockholders of 21CF will receive $38 per share, with the election to receive their consideration, on a value equalized basis, in the form of cash or stock,[3] subject to proration and adjustment for certain tax liabilities (the "Merger Consideration"). The Proposed Transaction is valued at $71.3 billion. Following the completion of the Proposed Transaction, assuming the tax adjustment amount is zero, 21CF stockholders will own approximately 17-20% and Disney stockholders will own approximately 80-83% of the combined company.

---

[1] Immediately prior to the close of the Proposed Transaction, 21CF will separate a portfolio of 21CF's news, sports and broadcast businesses, including the Fox News Channel, Fox Business Network, Fox Broadcasting Company, Fox Sports, Fox Television Stations Group, and sports cable networks FS1, FS2, Fox Deportes and Big Ten Network, into a newly listed company that will be spun off to its stockholders, with 21CF stockholders receiving one share of New Fox common stock for each share of 21CF they own. Prior to the completion of the spin-off, New Fox will pay an $8.5 billion cash dividend to 21CF, subject to certain adjustments, representing an estimate of 21CF's tax liability in connection with the spin-off.

[2] 21CF and Disney previously entered into a December 14, 2017 Agreement and Plan of Merger (the "Initial Merger Agreement"), which was later amended, under which 21CF stockholders would have received 0.2745 shares of Disney common stock for each share of 21CF common, subject to adjustment for certain tax liabilities (the "Initial Merger Consideration").

[3] The value of the stock consideration (determined based on the average Disney stock price) will be equal to a number of shares of Disney common stock equal to the applicable exchange ratio. If the average Disney stock price is greater than $114.32, then the exchange ratio will be 0.3324. If the average Disney stock price is greater than or equal to $93.53 but less than or equal to $114.32, then the exchange ratio will be an amount equal to $38.00 divided by the average Disney stock price. If the average Disney stock price is less than $93.53, then the exchange ratio will be 0.4063.

3.      On June 28, 2018, 21CF filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that 21CF stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) 21CF's financial projections, including the financial projections relied upon by 21CF's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Centerview Partners LLC ("Centerview"), in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and Centerview; and (iii) Goldman's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as 21CF stockholders need such information in order to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction.

4.      Unless remedied, 21CF's public stockholders will be forced to make voting and appraisal decisions on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this Action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, 28 U.S.C. §§1331.

6.      Venue is proper in this Court pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391. Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District. In connection with the acts, conduct and other wrongs complained of herein, Defendants used the means and instrumentalities of interstate commerce. 21CF maintains its principal executive offices in this district at 1211 Avenue of the Americas, New York, New York 10036.

## PARTIES

7.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of 21CF.

8.    Defendant 21CF, a Delaware corporation, is a diversified global media and entertainment company. The Company operates through five segments: cable network programming, television, filmed entertainment, direct broadcast satellite television, and other, corporate and eliminations. The Company has a portfolio of cable, broadcast, film, pay television and satellite assets spanning six continents across the globe. The Company is home to a global portfolio of cable and broadcasting networks and properties, including FOX, FX, FXX, FS1, Fox News Channel, Fox Business Network, Fox Sports, Fox Sports Network, National Geographic Channels, Fox Pan American Sports, MundoFox, STAR and 28 local television stations; film studio Twentieth Century Fox Film, and television production studios Twentieth Century Fox Television and Shine Group. The Company also provides content to a range of subscribers through its pay-television services in Europe and Asia, including its equity interests in BSkyB and Tata Sky. 21CF Class A and Class B common stock is traded on the NASDAQ under the trading symbols "FOXA" and "FOX", respectively.

9.    Defendant Rupert Murdoch ("Rupert Murdoch") has been Executive Chairman of the Board since 2015 after serving as Chief Executive Officer of the Company from 1979 to 2015 and its Chairman since 1991. Since July 2016, Rupert Murdoch has served as Chairman and acting CEO of Fox News Channel and Fox Business Network, each a subsidiary of the Company. He also has served as the Executive Chairman of News Corporation ("News Corp") since 2012. Rupert Murdoch is the father of defendants Lachlan Murdoch and James Murdoch.

10.    Defendant Lachlan K. Murdoch ("Lachlan Murdoch") has been Executive Chairman of the Board since 2015 after serving as Co-Chairman since 2014. He has served as a

Director of the Company since 1996. Lachlan Murdoch has served as Executive Chairman of Nova Entertainment, an Australian media company, since 2009. He has served as the Executive Chairman of Illyria Pty Ltd, a private company, since 2005. Lachlan Murdoch served as a Director of Ten Network Holdings Limited, an Australian media company, from 2010 to 2014 and as its Non-Executive Chairman from 2012 to 2014, after serving as its Acting Chief Executive Officer from 2011 to 2012. Since 2013, he has served as a Director of News Corp and as its Co-Chairman since 2014. Lachlan Murdoch served as an advisor to the Company from 2005 to 2007, and served as its Deputy Chief Operating Officer from 2000 to 2005. Lachlan Murdoch is the son of defendant Rupert Murdoch and the brother of defendant James Murdoch.

11.    Defendant Chase Carey ("Carey") has been Vice Chairman of the Board and a consultant to the Company since July 2016 and a director of the Company since 2009 and previously from 1996 to 2007.

12.    Defendant Sir Roderick L. Eddington ("Eddington") has been a director of the Company since 1999 and the Lead Director since 2006.

13.    Defendant Delphine Arnault ("Arnault") has been a director of 21CF since 2013.

14.    Defendant James W. Breyer ("Breyer") has been a director of 21CF since 2011.

15.    Defendant David DeVoe ("DeVoe") has been a director of 21CF since 1990.

16.    Defendant Viet Dinh ("Dinh") has been a director of 21CF since 2004.

17.    Defendant James R. Murdoch ("James Murdoch") has been a Director of the 21CF since 2007 and its Chief Executive Officer since 2015 after serving as Co-Chief Operating Officer from 2014 to 2015. He previously served as the Deputy Chief Operating Officer and Chairman and CEO, International of the Company from 2011 to 2014, after serving as the Company's Chairman and Chief Executive, Europe and Asia beginning in 2007. James Murdoch was the Chief Executive Officer of Sky from 2003 to 2007. James Murdoch has served as a

Director of Sky since 2003 and has served as its Chairman since April 2016 after previously serving as its Chairman from 2007 to 2012. He served on the Supervisory Board of Sky Deutschland from 2013 to 2015 and served as its Chairman from 2013 to 2014. James Murdoch was the Chairman and Chief Executive Officer of STAR Group Limited, a subsidiary of the Company, from 2000 to 2003. James Murdoch previously served as an Executive Vice President of the Company, and served as a member of the Board from 2000 to 2003. He has served as a Director of News Corp since 2013. James Murdoch is the son of defendant Rupert Murdoch and the brother of defendant Lachlan Murdoch.

18.     Defendant Jacques Nasser ("Nasser") has been a director of 21CF since 2013.

19.     Defendant Robert Silberman ("Silberman") has been a director of 21CF since 2013.

20.     Defendant Tidjane Thiam ("Thiam") has been a director of 21CF since 2014.

21.     The defendants identified in paragraphs 10 through 21 are collectively referred to

22.     herein as the "Board" or the "Individual Defendants."

## RELEVANT NON-PARTIES

23.     Disney, together with its subsidiaries, is a diversified worldwide entertainment company with operations in four business segments: Media Networks, Parks and Resorts, Studio Entertainment, and Consumer Products & Interactive Media. Disney is a Dow 30 company and had annual revenues of $55.1 billion in its fiscal year 2017. Disney's common stock is traded on the New York Stock Exchange under the ticker symbol "DIS."

24.     Robert A. Iger ("Iger") was appointed Chairman of the Board and Chief Executive Officer of Disney effective March 13, 2012. He was President and Chief Executive Officer of Disney from October 2, 2005 through that date.

25.     New Disney is a Delaware corporation and a wholly owned subsidiary of Disney.

26.    Delta Sub is a Delaware corporation and wholly owned subsidiary of New Disney.

27.    Wax Sub is a Delaware corporation and wholly owned subsidiary of New Disney.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own 21CF common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.    This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 29, 2018, there were 798,520,953 shares of 21CF class B common stock outstanding and 1,054,032,541 shares of 21CF class A common stock outstanding. All members of the Class may be identified from records maintained by 21CF or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

30.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

a.    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b.    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

7

c.      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

31.      Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

32.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

33.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS
### Background of the Company

34.      21CF is the fourth-largest media conglomerate in the world with a global portfolio of cable and broadcasting networks. The Company operates in four segments: Cable Network Programming, Television, Filmed Entertainment, and Other, Corporate and Eliminations.

35.      The Company's Cable Network Programming segment includes FOX News and Fox Business Network, regional sports network Fox Sports Net, Inc. ("FSN"), a 51% ownership interest in the Big Ten Network, FX Networks, LLC ("FX"), and a 73% controlling interest in National Geographic Partners, LLC, among others.

36.      21CF's Television segment includes (i) Fox Television Stations, LLC, which owns and operates 28 full power stations; (ii) FOX Broadcasting Company ("FOX"), which has 207 affiliates ("FOX Affiliates"), including 17 stations owned and operated by the Company; and

(iii) Master Distribution Service, Inc. (branded as MyNetworkTV), a programming distribution service.

37.    21CF's Filmed Entertainment segment involves (i) motion picture production and distribution, including Twentieth Century Fox Film ("TCFF"), one of the largest producers and distributors of motion pictures, which produces, acquires and distributes motion pictures throughout the world under a variety of arrangements; (ii) television programming, production and domestic syndication distribution, including Twentieth Century Fox Television and Fox21 Television Studios; and (iii) 21CF's motion picture and television library (the "Fox Library"), consisting of varying ownership and distribution rights to several thousand previously released motion pictures and well-known television programs. The Fox Library includes many well-known titles, including, *The Sound of Music*, *Home Alone*, the *Star Wars* series, the *Die Hard* series, and the *X-Men* series, among others.

38.    In addition to its businesses, 21CF holds an approximate 39% equity interest in Sky, the U.K.'s leading entertainment and communications provider, and an approximate 30% equity interest in Hulu, LLC ("Hulu"), the operator of an on-demand video streaming service.

## The Proposed Transaction

39.    On December 13, 2018, the Board approved the Initial Merger Agreement, which the parties executed that same day.

40.    On June 13, 2018, Comcast Corporation ("Comcast") made an unsolicited, nonbinding proposal to acquire 21CF (after giving effect to the separation and the distribution of New Fox shares) for $35.00 per share in cash, subject to an adjustment for transaction taxes. Thereafter, Disney increased its proposed purchase price to $38.00 per share in cash and stock.

41.     On June 20, 2018, Goldman and Centerview each rendered their fairness opinions. Later that day, the parties entered into the Merger Agreement.

42.     Pursuant to the Merger Agreement, following the separation and distribution of New Fox shares to 21CF stockholders, (1) Delta Sub will be merged with and into Disney, and Disney will continue as the surviving corporation, and (2) Wax Sub will be merged with and into 21CF, and 21CF will continue as the surviving corporation. As a result of the mergers, Disney and 21CF will become direct wholly owned subsidiaries of New Disney, which will be renamed "The Walt Disney Company" concurrently with the mergers.

43.     On June 20, 2018, 21CF issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> **NEW YORK – June 20, 2018** – Twenty-First Century Fox, Inc. ("21CF") (NASDAQ: FOXA, FOX) announced today that it has entered into an amended and restated merger agreement with The Walt Disney Company ("Disney") (NYSE: DIS) pursuant to which Disney has agreed to acquire for a price of $38 per 21CF share the same businesses Disney agreed to acquire under the previously announced merger agreement between 21CF and Disney (the "Disney Merger Agreement"). This price represents a significant increase over the purchase price of approximately $28 per share included in the Disney Merger Agreement when it was announced in December 2017. The amended and restated Disney Merger Agreement offers a package of consideration, flexibility and deal

certainty enhancements that is superior to the proposal made by the Comcast Corporation on June 13, 2018.

Under the amended and restated Disney Merger Agreement, Disney would acquire those businesses on substantially the same terms, except that, among other things, Disney's offer allows 21CF stockholders to elect to receive their consideration, on a value equalized basis, in the form of cash or stock, subject to 50/50 proration. The collar on the stock consideration will ensure that 21st Century Fox shareholders will receive a number of Disney shares equal to $38 in value if the average Disney stock price at closing is between $93.53 and $114.32.

"We are extremely proud of the businesses we have built at 21st Century Fox, and firmly believe that this combination with Disney will unlock even more value for shareholders as the new Disney continues to set the pace at a dynamic time for our industry," said Rupert Murdoch, Executive Chairman of 21st Century Fox. "We remain convinced that the combination of 21CF's iconic assets, brands and franchises with Disney's will create one of the greatest, most innovative companies in the world."

In light of the revised terms contained in the amended and restated Disney Merger Agreement, 21CF's board, after consultation with its outside legal counsel and financial advisors, has not concluded that the unsolicited proposal it received on June 13, 2018 from Comcast could reasonably be expected to result in a "Company Superior Proposal" under the Disney Merger Agreement.

However, the amended and restated Disney Merger Agreement contains no changes to the provisions relating to the Company's directors' ability to evaluate a competing proposal.

As announced on May 30, 2018, 21CF has established a record date of May 29, 2018 and a meeting date of July 10, 2018, for a special meeting of its stockholders to, among other things, consider and vote on a proposal to adopt the Disney Merger Agreement. 21CF has determined to postpone its special meeting of stockholders to a future date in order to provide stockholders the opportunity to evaluate the terms of Disney's revised proposal and other developments to date. Once 21CF determines the new date for 21CF's special meeting of stockholders, the date will be communicated to 21CF stockholders.

**Insiders' Interests in the Proposed Transaction**

44.     21CF insiders, not the Company's public stockholders, are the primary beneficiaries of the Proposed Transaction. The Board and 21CF's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to 21CF's public stockholders, including Plaintiff.

45.     21CF insiders stand to reap substantial financial benefits for securing the Proposed Transaction. On February 20, 2018, 21CF made a special grant of restricted stock units, which we refer to as the Retention RSU grants, to its named executive officers (and certain other senior executives). The Retention RSU grants will vest 50% shortly prior to the 21CF effective time and 50% on the 15-month anniversary of the 21CF effective time, subject to each executive officer's continued employment through the applicable vesting date.. The following table sets forth the value of the payments the Company's named executed officers stand to receive in connection with their restricted stock units:

| Name | Shares Underlying Retention RSU Grant (#) | Value of Retention RSU Grant ($) |
|------|------------------------------------------|----------------------------------|
| K. Rupert Murdoch | 360,873 | 17,383,252 |
| Lachlan K. Murdoch | 569,800 | 27,447,266 |
| James R. Murdoch | 569,800 | 27,447,266 |
| John P. Nallen | 253,244 | 12,198,763 |
| Gerson Zweifach | 189,933 | 9,149,073 |

46.     Further, if they are terminated in connection with the Proposed Transaction, 21CF's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | | | **Golden Parachute Compensation** | | | | |
| **Name** | **Cash** | **Equity** | **Pension / Non-Qualified Deferred Compensation** | **Perquisites / Benefits** | **Tax Reimbursement** | **Other** | **Total** |
|---|---|---|---|---|---|---|---|
| K. Rupert Murdoch Executive Chairman | 39,946,575 | 36,908,5 | — | 15,000 | — | — | 76,870,151 |
| Lachlan K. Murdoch Executive Chairman | 25,616,438 | 58,276,7 | 1,241,000 | 15,000 | — | — | 85,149,227 |
| James R. Murdoch Chief Executive Officer | 25,616,438 | 58,276,7 | 2,777,000 | 15,000 | — | — | 86,685,227 |
| John P. Nallen Senior Executive Vice President and Chief Financial Officer | 18,904,109 | 25,900,7 | — | 51,690 | — | — | 44,856,568 |
| Gerson Zweifach Senior Executive Vice President and Group General Counsel | 13,582,192 | 18,581,3 | — | 74,724 | — | — | 32,238,301 |

### The Proxy Statement Contains Material Misstatements and Omissions

47.    The Proxy Statement filed with the SEC and disseminated it to 21CF's stockholders is materially incomplete and misleading and, as a result, Company's stockholders to cannot make an informed decision whether to vote to approve the Proposed Transaction.

48.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) 21CF's financial projections, including the financial projections relied upon by 21CF's financial advisors, Goldman and Centerview; (ii) the data and inputs underlying the

financial valuation analyses that support the fairness opinions provided by Goldman and are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning 21CF's Financial Projections*

49.    The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

50.    The Proxy Statement sets forth that in connection with Goldman's fairness opinion and its related financial analyses, Goldman reviewed the 21CF forecasts, "which include certain internal financial analyses and forecasts for RemainCo and certain financial analyses and forecasts for Sky . . . and Hulu, LLC, entities in which 21CF holds equity investments provided by the management of 21CF, as approved for Goldman Sachs' use by 21CF, and certain operating synergies projected by the management of 21CF to result from the transactions" (Proxy Statement at 143), which 21CF approved for Goldman's use in its financial analyses and refers to as the "Synergies".

51.    The Proxy Statement fails to disclose, however, any projections or forecasts for Hulu and fails to disclose the Synergies.

52.    With respect to the forecasted financial information for Sky, provided to Goldman by 21CF, the Proxy Statement fails to quantify and disclose the items that were excluded to calculate adjusted EBITDA over the projection period.

53.    The omission of this information renders the statements in the "Certain 21CF Forecasts" and "Opinion of 21CF's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

54.    Further, the forecasts provided to Goldman "do not reflect forecasted financial information with respect to Sky." Instead, " this forecasted financial information with respect to Sky was derived from publicly available third-party research dated September 2016 and Sky filings, was not provided by Sky, has not been disclosed with the cooperation or agreement of Sky and is not a consensus forecast. Other than certain extrapolations (as described below), the following forecasted financial information with respect to Sky does not reflect independent determinations by 21CF management."

55.    54.    Assumptions about Sky throughout the Proxy Statement, including that its value was derived using 21CF's current offer price (for the 61% of shares not owned by 21CF) of £10.75 per share, should be corrected. Less than two weeks after the Proxy Statement was mailed, *The Wall Street Journal* reported in an article entitled "21st Century Fox Raises Offer for Sky, Topping Comcast Bid; Fox's new offer values the U.K. broadcaster at $32.5 billion amid a bidding war with U.S. cable giant" that:

> Rupert Murdoch's 21st Century Fox Inc. significantly lifted its offer price to consolidate ownership of Sky PLC, heating up a bidding war with Comcast Corp. for the British broadcaster.
>
> Fox raised its bid for the roughly 61% of Sky it doesn't already own by more than 30%, to £14 a share, in a deal that values all of Sky at £24.5 billion ($32.5 billion). Fox said Sky's independent directors have agreed to the new offer.
>
> The bid tops a rival offer from Comcast, which is competing with Fox for Sky and could come back with a higher offer, still. Comcast is also competing with Walt Disney Co. in a bidding war for a big chunk of Fox assets, including the 39% stake in Sky. Fox's higher bid for Sky, disclosed early Wednesday, essentially bolsters Fox's agreement to sell those assets to Disney.
>
> \* \* \*
>
> Comcast has made its own, separate bid for all of Sky, offering £12.50 a share, a steep premium to Fox's original bid of £10.75.

A Comcast representative declined to comment Wednesday.

Sky shares were up 0.8% Wednesday afternoon at £15.14 after falling earlier in the day.

That is well above the new Fox offer, suggesting investors are betting on a fresh bid from Comcast, or an even-higher eventual offer from Fox. Under the terms of the new pact Fox said it reached with Sky's independent directors, Fox requires support from 75% of Sky's non-Fox shareholders.

\* \* \*

Fox said it had obtained previous consent from Disney for the higher offer. Fox will take on larger debt to fund the deal. That liability will ultimately fall to Disney, assuming it completes its deal for Fox.

### Material Omissions Concerning Goldman's and Centerview's Financial Analyses

56.    The Proxy Statement describes Goldman's and Centerview's fairness opinions and the various valuation analyses performed in support thereof. However, the description of Goldman's and Centerview's fairness opinions and analyses omits key inputs and assumptions underlying these analyses, without which 21CF's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Centerview's fairness opinions in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to 21CF's stockholders.

57.    With respect to Goldman's *Implied Value and Multiple Analysis*, the Proxy Statement fails to disclose the estimated calendar 2018 EBITDA for RemainCo, both including and excluding Synergies.

58.    With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) 21CF's net debt and minority interests utilized in its analysis; (ii) quantification of the value of the unconsolidated assets (including the

30% interest in Hulu, but excluding the 39% interest in Sky), of RemainCo, in each case as of June 30, 2018; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5% that Goldman applied in its analysis.

59.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of New Disney, the Proxy Statement fails to disclose: (i) the unlevered free cash flows to be generated by Disney for October 1, 2019 through September 30, 2023, utilized by Goldman in its analysis, as well as the underlying inputs; (ii) New Disney's net debt and minority interests utilized in its analysis; (iii) quantification of the value of the unconsolidated assets (including the 60% interest in Hulu, and the 39% interest in Sky), of New Disney, as of September 30, 2019; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.75% to 8.75% that Goldman applied in its analysis.

60.     This is especially important because both Goldman and Centerview made certain assumptions based upon 21CF forecasts, including Goldman assuming a "discount rates ranging from 6.75% to 7.75%, reflecting estimates of RemainCo's weighted average cost of capital" and "applying perpetuity growth rates ranging from 2.0% to 2.5% to the estimate of the terminal year unlevered free cash flow of RemainCo," as compared with Centerview, which used "discount rates ranging from 7.25% to 8.25% (derived by application of the capital asset pricing model, which requires certain company-specific inputs....)" and a "perpetuity growth rates ranging from 1.0% to 2.0%."

61.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in its analysis; (ii) quantification of the value of the unconsolidated assets

(excluding the interests in Hulu, LLC, and Sky); and (iii) quantification of the inputs and assumptions underlying the discount rate of 9.75% that Goldman applied in its analysis.

62.    With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of 21CF's 30% interest in Hulu and its 39% interest in Sky, the Proxy Statement fails to disclose: (i) the time period covered in the analysis; (ii) estimates of revenue for Hulu for future years; (iii) estimates of EBITDA for Sky for future years; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 10.5% to 12.5% and 7.75% that Goldman applied to Hulu and Sky, respectively, in the analysis.

63.    With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of New Disney, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in the analysis; (ii) quantification of the value of the unconsolidated assets (excluding the interests in Hulu and Sky); and (iii) quantification of the inputs and assumptions underlying the discount rate of 8.5% that Goldman applied in the analysis.

64.    With respect to Goldman' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in the analysis; and (ii) the value of the unconsolidated assets (including the 30% interest in Hulu, but excluding the 39% interest in Sky), of RemainCo, in each case as of June 30, 2018.

65.    With respect to Centerview's *Selected Public Company Analysis* and *Selected Precedent Transaction Analysis* for RemainCo, the Proxy Statement fails to disclose: (i) 21CF's net debt as of June 30, 2018 attributed by 21CF management to RemainCo; and (ii) estimated values for RemainCo's interest in Sky, Hulu, other unconsolidated assets, and certain minority interests in RemainCo subsidiaries.

66.      With respect to Centerview's *Discounted Cash Flow Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) RemainCo's terminal year estimate of unlevered free cash flow utilized by Centerview in the analysis; (ii) 21CF's net debt utilized in the analysis; (iii) estimated values for RemainCo's interests in Sky, Hulu, other unconsolidated assets, and certain minority interests in RemainCo subsidiaries; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25% that Centerview applied in the analysis.

67.      With respect to Centerview's *Selected Public Company Analysis* of Disney, the Proxy Statement fails to disclose the estimated EBITDA to be generated by Disney's consolidated assets for the fiscal year ending September 30, 2019.

68.      With respect to Centerview's *Discounted Cash Flow Analysis* of Disney, the Proxy Statement fails to disclose: (i) the unlevered free cash flows of Disney's consolidated assets over the period beginning July 1, 2018 through September 30, 2023, utilizing the 21CF Disney forecasts and assumptions discussed with 21CF management, utilized by Centerview in the analysis; (ii) Disney's terminal year estimate of unlevered free cash flow utilized in the analysis; (iii) estimated values for Disney's interest in Hulu; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0% that Centerview applied in the analysis.

69.      When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better

understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

70.     The omission of this information renders the statements in the "Certain 21CF Forecasts," "Certain Disney Forecasts" and "Opinions of 21CF's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Goldman's Conflicts of Interest**

71.     Further, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Goldman.

72.     The Proxy Statement sets forth that "[a]t the request of 21CF, an affiliate of Goldman Sachs has entered into financing commitments to provide New Fox with a Senior Unsecured 364 Day Bridge Facility (aggregate principal amount of $9 billion) in connection with the consummation of the transactions, subject to the terms of such commitments. An affiliate of Goldman Sachs may also act as a lead underwriter, initial purchaser, placement agent, arranger and bookrunner in connection with New Fox's possible incurrence of permanent debt financing." (Proxy Statement at 152). The Proxy Statement fails, however, to disclose (i) when the Company asked affiliates of Goldman to provide financing to New Fox and act as a lead underwriter, initial purchaser, placement agent, arranger and bookrunner in connection with New Fox's possible incurrence of permanent debt financing; and (ii) whether the full Board was aware of and discussed this conflict before (a) Goldman's engagement to act as the Company's financial advisor; and (b) Goldman issued its fairness opinion.

73.     Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, 21CF stockholders are

entitled to full disclosure of Goldman's conflicts and the Board's awareness and evaluation of these conflicts.

73.      The omission of this information renders the statements in the "Background of the Transaction" and "Opinion of 21CF's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

74.      The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### CLASS CLAIMS AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND SEC RULE 14A-9 PROMULGATED THEREUNDER

75.      Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.      During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

77.      By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses

performed by the Company's financial advisors, the actual intrinsic standalone value of the

Company, and potential conflicts of interest faced by the Company's financial advisor, Goldman.

78.    The defendants were at least negligent in filing the Proxy Statement with these

materially false and misleading statements.

79.    The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder will consider them important in deciding how to vote on

the Proposed Transaction or whether to seek appraisal. In addition, a reasonable investor would

view a full and accurate disclosure as significantly altering the "total mix" of information made

available in the Proxy Statement and in other information reasonably available to stockholders.

80.    By reason of the foregoing, defendants violated Section 14(a) of the Exchange

Act and SEC Rule 14a-9 promulgated thereunder.

81.    Because of the false and misleading statements in the Proxy Statement, Plaintiff

and the Class are threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

## CLASS CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT

82.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

83.    The Individual Defendants acted as controlling persons of 21CF within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of 21CF and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly,

the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

84.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

85.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

86.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

87.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

88.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section

20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, 21CF's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of 21CF, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to 21CF stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: July 17, 2018                    Respectfully Submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

s/ Gloria K. Melwani
Gloria K. Melwani

270 Madison Ave, 10th floor
New York, NY 10016
Telephone: (212) 545 4626
Facsimile: (212) 686 0114
Email: melwani@whafh.com

**_Attorneys for Plaintiff_**

GM/jh:800340